UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| WALLACE E. KIENAST, | ) | CIV. 11-5077-JLV |
| | ) | |
| Plaintiff, | ) | ORDER AFFIRMING |
| | ) | DECISION OF THE |
| vs. | ) | COMMISSIONER |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Plaintiff Wallace E. Kienast filed a complaint appealing from an

administrative law judge's (ALJ) decision denying disability benefits.

(Docket 1). Defendant[1] denies plaintiff is entitled to benefits. (Docket 6).

The court issued a briefing schedule requiring the parties to file a joint

statement of material facts ("JSMF"). (Docket 7). The parties filed their

JSMF. (Docket 8). For the reasons stated below, plaintiff's motion to

reverse the decision of the Commissioner (Docket 9) is denied and the

defendant's motion to affirm the ALJ's decision (Docket 11) is granted.

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin is
automatically substituted for Michael J. Astrue as the defendant in all pending
social security cases. No further action need be taken to continue this suit by
reason of the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 8) is incorporated by reference. Further recitation of salient facts is included in the discussion section of this order.

On August 1, 2005, Mr. Kienast filed an application for disability insurance benefits asserting a disability date of March 15, 2004. Id. at ¶ 1. On March 1, 2007, the ALJ issued a decision finding that Mr. Kienast was not disabled (the "2007 ALJ decision"). Id. at ¶ 2. On December 19, 2008, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. Id. at ¶ 4. Following a second hearing, the ALJ issued a written decision dated April 23, 2010, that Mr. Kienast was not disabled during the pertinent time period. Id. at ¶ 5. The Appeals Council denied Mr. Kienast's review request. Id. at ¶ 7. The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. Id. It is from this decision which Mr. Kienast timely appeals.

The issue before the court is whether the ALJ's decision of April 23, 2010, (the "2010 ALJ decision") "that Kienast was not under a disability . . . from March 15, 2004, . . . through December 31, 2009 . . . ." is supported by the substantial evidence on the record as a whole. Id. at ¶ 5 (internal quotation marks omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would have decided the case differently, it cannot reverse the

Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).  A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

## DISCUSSION

The 2010 ALJ decision should be examined in the context of the Appeals Council's remand decision.  The basis for the Appeals Council's decision is summarized as follows:

1. The ALJ failed to define what was meant by the term "limited" as applied to "near and far acuity, depth perception, accommodation, color vision and field of vision, and . . . it was not clear that Kienast can perform his past relevant work as a multi-lines claims adjuster . . . .";

2. Mr. Kienast was unable to "perform his past relevant work as a mutli-lines claims adjuster as . . . that job required lifting up to 45 pounds and the ALJ had limited Kienast to light work . . . lifting no more than 20 pounds at a time. . . ."; and

3. The ALJ failed to "identity work skills that Kienast had acquired [or] the jobs to which those skills transfer . . . ."

(Docket 8 at ¶ 4).  To the extent Mr. Kienast chose not to challenge the 2010 ALJ decision for failing to specifically address these three issues, those challenges are waived.  Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999)

("[F]ailure to raise the argument at the agency level 'ordinarily prevents a party from raising it in judicial proceeding.' ") (citing Weikert v. Sullivan, 977 F.2d 1249, 1254 (8th Cir. 1992) (bracketing omitted); Harwood v. Apfel, 186 F.3d 1039, 1043 (8th Cir. 1999) (an issue not raised with the Appeals Council not reviewable in district court). To the extent Mr. Kienast argues the 2010 ALJ decision failed to address the physical components presented in the record, the court will resolve those challenges.

Mr. Kienast challenges the 2010 ALJ decision on two principal grounds, which are summarized as follows:

1.    Plaintiff's subjective complaints of pain and
       functional limitations were improperly discredited;
       and

2.    The finding as to plaintiff's residual functional
       capacity ("RFC") is erroneous as a matter of law and
       is not supported by substantial evidence.

(Docket 10 at pp. 3 & 14). Each challenge will be addressed separately.

## 1.    PLAINTIFF'S SUBJECTIVE COMPLAINTS OF PAIN AND FUNCTIONAL LIMITATIONS WERE IMPROPERLY DISCREDITED

### A.    PAIN

The ALJ concluded Mr. Kienast's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are

inconsistent with the . . . [RFC] assessment." (Administrative Record at p. 21) ("AR at p. ____"). When analyzing a claimant's subjective complaints of pain, the ALJ must examine:

1.   the claimant's daily activities;

2.   the duration, frequency and intensity of the pain;

3.   precipitating and aggravating factors;

4.   the dosage, effectiveness and side effects of medication; and

5.   functional restrictions.

<u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ may properly discount the claimant's testimony where it is inconsistent with the record. <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 590 (8th Cir. 2004). "[T]he ALJ cannot simply invoke <u>Polaski</u> or discredit the claims because they are not fully supported by medical evidence. . . . Instead, the ALJ must make an express credibility determination that explains, based on the record as a whole, why the claims were found to be not credible." <u>Dukes v. Barnhart</u>, 436 F.3d 923, 928 (8th Cir. 2006) (internal citation omitted).

Mr. Kienast argues the ALJ did not properly analyze his subjective complaints of pain under the <u>Polaski</u> factors. (Docket 10 at p. 5). However, the ALJ is not required to cite to <u>Polaski</u>. Rather, the ALJ may "cite the proper regulations and . . . correctly list[] the relevant facts that should be

considered in assessing the credibility of claimant's subjective complaints [of pain]." Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001).

The 2010 ALJ decision specifically addressed the pain evidence regulations. "To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful activity." (AR at p. 21) (referencing 20 CFR §§ 404.1529 and 416.929 and SSR 96-7p). "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 CFR § 404.1529(a). "Other evidence" is defined as:

> statements or reports from you, your treating or nontreating [physicians], and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your treating . . . or nontreating [physicians], or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.

Id. (internal citations omitted). "In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you." Id.

To evaluate the intensity and persistence of a claimant's pain, the ALJ is required to consider:

(i)     [Claimant's] daily activities;

(ii)    The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] . . . to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, [claimant] receive[s] . . . for relief of . . . pain or other symptoms;

(vi)    Any measures [claimant] use[s] . . . to relieve . . . pain or other symptoms . . . ; and

(vii)   Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

Id. at § 404.1529(c)(3); see also 20 CFR § 416.929 (same factors) (the "CFR factors"). The CFR factors "largely mirror the Polaski factors." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).

While inartfully stated and not organized clearly, the ALJ touched upon each of the CFR factors.

(i)     The claimant drives and does most of the grocery shopping. . . . [can] walk about one mile at one time. . . . can stand for 10-15 minutes and sit for 30 to 45 minutes at one time. . . . [can] lift about 15 to 20 pounds. . . . is able to take care of all of his personal needs. . . . checks the email and returns phone . . . . and spends some more time on the computer or on the phone. (AR at pp. 21 & 22);

(ii)     The claimant testified that his neck pain is constant and can reach as high as a 10 on a scale of 0-10 . . . . (AR at p. 21);

(iii)    In spite of his allegations of disabling neck pain, he would still ride an ATV 2 to 3 times a month for about an hour each time. Id.;

(iv)    In spite of . . . intense pain, he does not use pain medications. . . . no prescription pain medication[2] . . . . Id.;

(v)     The claimant stated that . . . the food science supplement allowed him to eliminate medication . . . . no restrictions recommended by the treating doctor . . . . his announced limits far exceed those given to him by his own treating physicians. (AR at pp. 21 & 22);

(vi)    [C]laimant . . . has periodic rest periods during the day. . . . will lie down or use the recliner for about 1/2 hour to an hour at a time. (AR at p. 21);

(vii)   [C]laimant [completed] a Physical Work Performance Evaluation ("PWPE") . . . participated fully in 20 of 20 tasks and demonstrated self-limiting participation by stopping on 0 out of 20 tasks. . . . the 3 1/2 hour evaluation was done without added rest period(s) . . . . Dr. Lawlor . . . put [him] at a maximum lift limit of 35 pounds, . . . no upper extremity overhead activity, . . . needs to change position from sitting to standing and walking every 45 minutes as necessary . . . and the claimant himself also concurred with

_____

[2]Mr. Kienast argues the ALJ failed to recognize he avoided drugs because of a prior prescription drug addiction. (Docket 10 at p. 6). However, the record discloses Mr. Kienast was prescribed and took Relafen and Flexeril, in January 2004, and then in September 2005, Dr. Lawlor discussed optemizing Mr. Kienast's medications, without objection or comment by Mr. Kienast. (Docket 8 at ¶¶ 9, 12 & 24). Mr. Kienast also requested and obtained a prescription of Viagra, with refills over the course of at least two years. (AR at p. 18).

these opined limitations. . . . [claims it is hard to use his computer, but] generates almost $20,000.00 in annual sales from his online business . . . . (AR at pp. 22 & 23).

"The ALJ is in the best position to determine the credibility of the testimony and is granted deference in that regard." Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001) (referencing Polaski). "Where adequately explained and supported, credibility findings are for the ALJ to make." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).

The ALJ properly cited to the Social Security regulations and then evaluated the testimony in light of those regulations. The court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation marks and citations omitted).

Mr. Kienast also challenges the ALJ's analysis of the daily activities described in the record. (Docket 10 at p. 9). Mr. Kienast argues his daily activities "are not inconsistent with [his] testimony that he is unable to be functional for an entire 8-hour workday." Id. One of the steps in the ALJ's analysis of pain intensity was to look at Mr. Kienast's daily activities in relationship to his pain and the issue of Mr. Kienast's credibility on pain. Mr. Kienast "testified that his neck pain is constant and can reach as high as a 10 on a scale of 0-10." (AR at p. 21).

Notwithstanding that testimony, Mr. Kienast describes still being able to engage in the following activities of daily living:

> [Mr. Kienast] would . . . ride an ATV 2 to 3 times a month for about an hour each time  . . . . [he] drives and does most of the grocery shopping. . . . [Mr. Kienast] estimated that he could walk about one mile at one time.  He can stand for 10-15 minutes and sit for 30 to 45 minutes at one time.  He thought he could lift about 15 to 20 pounds. [Mr. Kienast] is able to take care of all of his personal needs. After showering and shaving, he reads his daily devotions and picks up around the house.  He checks the email and returns phone calls. He prepares his lunch and spends some more time on the computer or on the phone.

(AR at pp. 21-22).  The regulations mandate the ALJ look at the comparison between the claimant's assertion of pain intensity and his activities of daily living.  20 CFR § 404.1529(c)(3)(i).  The ALJ did not reject totally Mr. Kienast's testimony regarding pain intensity, but rather the ALJ chose to conclude the activities of daily living were inconsistent with the pain intensity claimed.  "The claimant's daily living activities are inconsistent with his assertions of neck pain.  Further, his announced limits far exceed those given to him by his own treating physicians. . . . given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor.  Yet a review of the record in this case reveals no restrictions recommended by the treating doctor."  (AR at p. 22).  The ALJ then gave Mr. Kienast's testimony less weight "concerning the intensity, persistence and limiting effect of these symptoms . . . ."  Id. at p. 21.

Again, the court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." <u>Schultz</u>, 479 F.3d at 983 (internal quotation marks and citations omitted).  The ALJ's credibility determination as to plaintiff's pain stands and Mr. Kienast's challenge to the 2010 ALJ decision on this ground is denied.

**B.    DOMINANT HAND TREMORS**

Mr. Kienast argues "[t]he ALJ . . . failed to consider Kienast's allegations of a severe tremor in his right dominant hand." (Docket 10 at p. 10).  Mr. Kienast submits the record supports his claim regarding the severity of his dominant hand tremors.  <u>Id.</u> (citing Docket 6 at ¶¶ 30, 38 & 50).

The ALJ noted Mr. Kienast's allegations of disability because of "right arm numbness and shaky [sic] . . . ." (AR at p. 16).  "Dr. Stuart Fromm of Black Hills Orthopedic and Spine Center. . . . noted that the EMG was consistent with significant cubital tunnel syndrome." <u>Id.</u> at p. 19.  Mr. Kienast "was scheduled for . . . an ulnar nerve transposition of the right elbow . . . . This surgery was done by Dr. Fromm on May 18, 2006." <u>Id.</u> at pp. 19-20.  The next week, Mr. Kienast's "right elbow appeared to be healing." <u>Id.</u> at p. 20.  "On May 31, 2006, [Mr. Kienast] had full range of motion of his right elbow and his hand was neurovacularly intact . . . ." <u>Id.</u>

"By June 28, 2006, [Mr. Kienast] had no complaints regarding his right elbow." Id. "Dr. Fromm reported that Kienast was having minimal pain in his right elbow and the numbness in the right hand was getting better." (Docket 8 at ¶ 34). "Kienast testified that surgery on the right arm in May 2006, had cured the numbness in his right hand but it did not help shakiness." Id. at ¶ 38. Later examinations by Dr. Fromm made no mention of Mr. Kienast's right hand issues. See id. at ¶¶ 42-44. To the contrary, neurosurgeon Dr. Edward Seljeskog reported on March 2, 2010, Mr. Kienast's "arms and legs had good strength (5/5), normal tone, and full range of motion . . ." Id. at ¶ 46. This is the last medical reference to Mr. Kienast's right hand.

As mentioned above, the ALJ found Mr. Kienast's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ." (AR at p. 21). Whether this determination included Mr. Kienast's complaints regarding his right hand tremors is not clear, however, Dr. Seljeskog's final report of March 2010 is inconsistent with Mr. Kienast's complaints.

The court finds no good reason to remand the case to the ALJ for a clarification of this functional symptom claim in light of Dr. Seljeskog's

report.  Mr. Kienast's challenge to the 2010 ALJ decision on this ground is

denied.

### C.    THIRD PARTY STATEMENTS

Mr. Kienast argues the ALJ "failed to consider third party

observations as to the disabling effect of [his] medical conditions." (Docket

10 at p. 12).  Plaintiff represents the record "contains seven written

statements from Kienast's friends and relatives describing, in varying detail,

Kienast's impairments and limitations." Id.  None of these statements were

incorporated into the JSMF.  See Docket 8.

The briefing schedule issued by the court directed plaintiff to "serve

on defendant, but not file, a proposed Joint Statement of Material Facts."

(Docket 7 at ¶ 1(a)).  The JSMF was to "describe all facts pertinent to the

decision of the case . . . ." Id.  "If there are disputed facts [file]. . . a separate

Joint Statement of Disputed Facts identifying the party who proposes

inclusion of each disputed fact and the record support for each proposed

inclusion." Id. at ¶ 1(d).  Plaintiff did not file a separate document including

the seven statements of third parties.

The failure of a party to comply with the court's order constitutes a

waiver of that argument.  Riggins, 177 F.3d at 693; Harwood v. Apfel, 186

F.3d at 1043; Medincine Shoppe International, Inc. v. Simmonds, No.

4:08CV90 FRB, 2009 WL 982701 at *2 (E.D. Mo. Apr. 13, 2009) ("In light of

the Court's specific direction that plaintiff act in accordance with [a local rule], the Court determines that plaintiff's failure to do so constitutes a waiver . . . .").

Notwithstanding that ruling, the court finds Mr. Kienast's argument without merit. As Mr. Kienast notes in his brief, the ALJ noted, "The claimant has reviewed the letters and statements from the claimant's wife . . . , son . . . , daughter . . . , church council . . . , and friends . . . ." (AR at p. 21) (citations to administrative record omitted). It appears the ALJ made a typographical error when stating "claimant has reviewed    . . ." as it would be more appropriate for the ALJ to report the "ALJ has reviewed . . . ."

Mr. Kienast cites to <u>Willcockson v. Astrue</u>, 540 F.3d 878, 880-81 (8th Cir. 2007) in support his argument. (Docket 10 at p. 13). However, <u>Willcockson</u> has more to say on the question of third-party statements than submitted by plaintiff. "[F]ailure to [explain why evidence from lay persons was rejected] does not always result in a remand. . . . we have sometimes concluded that third-party evidence supporting a claimant's complaints was the same as evidence that the ALJ rejected for reasons specified in the opinion. In such circumstances, we have refused to remand based on an 'arguable deficiency in opinion-writing technique' that had no effect on the outcome of the case. . . ." <u>Id.</u> at 880 (internal citations omitted). Where "the decision of the ALJ made it clear that the ALJ had discredited the third-

party statements, though it did not explain why" remand is not necessary.

Id. (referencing Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992)).

In the present case, it is clear the ALJ reviewed the third-party statements. Those statements which plaintiff incorporates into his brief bring forth the same general description of Mr. Kienast as noted by the ALJ. "The claimant used to golf, fish, hunt, and do yard work projects. The claimant asserted that he has periodic rest periods during the day. He will lie down or use the recliner for about 1/2 hour to an hour at a time." (AR at p. 21). The court finds the ALJ may have not used the best "opinion-writing technique" but he considered the third-party statements and gave them some weight. Willcockson, 540 F.3d at 880. The court will not remand this case "based on an arguable deficiency in opinion-writing technique that had no effect on the outcome of the case." Id. (internal quotation marks and citation omitted).

Mr. Kienast's challenge to the 2010 ALJ decision on this ground is denied.

**2.     THE FINDING AS TO PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY IS ERRONEOUS AS A MATTER OF LAW AND IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

Mr. Kienast argues the ALJ's conclusion regarding RFC "is erroneous as a matter of law and not supported by substantial evidence" for a number of reasons. (Docket 10 at p. 15). Those arguments are:

A.    [T]he RFC finding contains no limitation based on Kienast's left eye blindness.  Id.;

B.    [T]he ALJ's finding as to . . . RFC erroneously fails to include any manipulative restrictions.  Id. at p. 17; and

C.    [T]he ALJ's RFC finding erroneously assumes Kienast is functional for an entire 8-hour workday. Id. at p. 18.

Each of these arguments will be addressed separately.

## A.    THE RFC FINDING CONTAINS NO LIMITATION BASED ON KIENAST'S LEFT EYE BLINDNESS

Plaintiff argues the ALJ found "[Mr.] Kienast has the 'severe' impairment of 'blindness in the left eye' . . . ." (Docket 10 at p. 16).  Under the Social Security Act, plaintiff argues "[a]n impairment is only 'severe' . . . if it 'significantly' limits a claimant's ability 'to do basic work activities.' " Id. (citing 20 CFR § 404.1521(a)).  Thus, plaintiff argues "[i]t must be self-evident that if an impairment 'significantly' limits a claimant's ability 'to do basic work activities,' restrictions exist which must be included in . . . claimant's [RFC]." Id. at pp. 15-16.

Mr. Kienast has "had problems seeing with his left eye since early childhood." (Docket 8 at ¶ 45).  According to plaintiff's opthamologist, Dr. Slingsby, Mr. Kienast is able to discern "hand motion" with his left eye.  Id. During his December 1, 2009, examination Mr. Kienast reported he felt his "left eye was 'doing good.' " Id.

During the second administrative hearing in 2010, Mr. Kienast

testified that his left eye vision "was limited to seeing just light and maybe

some shapes out of the very left hand corner of his eye . . . . this vision loss

greatly affected his depth perception as far as reading, writing, and reaching

for things." Id. at ¶ 48. "When he tried to shake someone's hand he would

sometimes miss the hand because he reached either too high or too low."

Id. "[W]hen he poured a glass of water he would sometimes overshoot or

undershoot it because he would lose depth perception." Id. When trying to

pick up an object, "he would miss the object and he had to be very slow and

deliberate." Id.

During the 2005 PWPE, which lasted approximately 3 1/2 hours, Mr.

Kienast never complained his vision impaired his ability to complete the

test. See AR at p. 22; Docket 8 at ¶ 25. Nor did Mr. Kienast testify his

vision was one of the reasons he could no longer work as a warehouse and

delivery person or as an insurance claims adjuster in his own business. Id.

at ¶ 54.

The ALJ found Mr. Kienast's RFC included being "blind in the left eye

and has 20/35 visual acuity in the right eye and has no difficulty reading a

computer screen." (AR at p. 20). Like Mr. Kienast's claim of pain severity,

the ALJ is entitled to give less weight to the claimant's visual impairment

claims when those complaints are not consistent with the substantial

evidence in the record.  42 U.S.C. § 405(g); <u>Choate</u>, 457 F.3d at 869.

In the 2010 ALJ decision, it was noted Mr. Kienast was "blind in the

left eye, however he has had this impairment since childhood which

did not prevent the claimant from engaging in SGA-level work,[3] and the fact

such did not prevent the claimant from working at that time strongly

suggests that it would not currently prevent work."  (AR at p. 21).  The ALJ

noted "the record reflects work activity after the alleged onset date, and in

fact the claimant continues to perform such self-employment, and while this

work activity does not presumptively indicate substantial gainful activity,

such work activity does not enhance his credibility in this matter, and in

fact suggests a capacity for significant functioning."  <u>Id.</u>  The ALJ further

noted Mr. Kienast's testimony "that it was hard for him to use the computer

due to his lack of depth perception."  <u>Id.</u> at p. 22.  "However, . . . claimant's

medical records refer to this eye surgery (and presumed loss of vision) for

well over 30 years.  The claimant has been able to work extensively and

qualify to operate a motor vehicle even with his vision loss for all of those

years."  <u>Id.</u>

The ALJ properly considered and weighed the available evidence and

Mr. Kienast's testimony.  His argument the ALJ's RFC is not supported by

---

[3]Substantial gainful activity.  20 CFR § 416.920(b).

any medical evidence is without merit.  <u>Wildman v. Astrue</u>, 596 F.3d 959, 969 (8th Cir. 2010) (claimant "fails to recognize that the ALJ's determination regarding [his] RFC was influenced by [the ALJ's] determination that [claimant's] allegations were not credible.").  "Moreover, the ALJ was not obligated to include limitations from opinions he properly disregarded."  <u>Id.</u>

Accepting Mr. Kienast's testimony and incorporating the ALJ's RFC, the vocational expert, Mr. Gravatt, concluded "if Kienast could read a computer screen, his lack of depth perception was not sufficiently severe so as to preclude work as a claims adjuster or as a customer representative." (Docket 8 at ¶ 55).  The ALJ adopted Mr. Gravatt's assessment.  (AR at p. 23).

Mr. Kienast's credible visual impairments were properly considered by the ALJ and were included in the final RFC.  The court finds substantial evidence in this record which a reasonable mind might accept as adequate to support the Commissioner's decision on Mr. Kienast's visual impairment claim.  42 U.S.C. § 405(g); <u>Choate</u>, 457 F.3d at 869.

Mr. Kienast's challenge to the 2010 ALJ decision on this ground is denied.

### B. THE ALJ'S FINDING AS TO RFC ERRONEOUSLY FAILS TO INCLUDE ANY MANIPULATIVE RESTRICTIONS

Mr. Kienast objects to the final RFC because it "erroneously fails to include any manipulative restrictions." (Docket 10 at p. 17).  The ALJ noted

Mr. Kienast's allegation of being disabled because of "right arm numbness and shaky [sic] . . . ." (AR at p. 16). Mr. Kienast's testimony described his perception of the consequences of his dominant hand tremors. See Docket 8 at ¶¶ 38 & 50. Following the transposition surgery recommended by Dr. Fromm, see id. at ¶ 30, there is no medical evidence describing Mr. Kienast's hand tremors existing to the extent outlined in his testimony. "Regarding the right upper extremity, Kienast was having minimal pain but the numbness had not yet changed. . . [he] had a full range of motion in his elbow." Id. at ¶ 33. "Dr. Fromm reported that Kienast was having minimal pain in his right elbow and that the numbness in the right hand was getting better . . . ." Id. at ¶ 34. "On January 28, 2008, Dr. Fromm reported that Kienast was doing very well and was pleased with the results of his knee replacement surgery . . . ." Id. at ¶ 44. While the focus of this appointment was certainly Mr. Kienast's total knee replacement, one would reasonably expect that if Mr. Kienast remained concerned about his dominant hand tremors, he would have discussed the issue with Dr. Fromm. The same conclusion can be drawn from Mr. Kienast's subsequent clinic visits with Dr. Seljeskog. See id. at ¶ 46.

During the 2005 PWPE, Mr. Kienast never complained his hand tremors impaired his ability to complete the test. See AR at p. 22; Docket 8

21

at ¶ 25. While noting Mr. Kienast's "dorsal neck pain and onset of occipital headache[s]" the PWPE evaluator never mentioned hand tremors "during testing in the dynamic strength category . . . ." (Docket 25 at ¶ 25). Mr. Kienast "participated fully in 20 of 20 tasks and demonstrated self-limiting by stopping on 0 out of 20 tasks." (AR at p. 22). "Based upon the evaluation, the claimant was capable of sustaining the Medium level of work[4] . . . for an 8-hour work day . . . ." Id.; see also Docket 8 at ¶ 25. Mr. Kienast never testified his hand tremors affected his daily activities, including being on his computer conducting an online business. See Docket 8 at ¶¶ 52 & 53. Nor did Mr. Kienast testify his tremors were one of the reasons he could no longer work as a warehouse and delivery person or as an insurance claims adjuster in his own business. Id. at ¶ 54.

The ALJ properly considered and weighed the evidence and Mr. Kienast's testimony. His argument the RFC's lack of manipulative limitations is defective is without merit. Wildman, 596 F.3d at 969. Again, "the ALJ was not obligated to include limitations from opinions he properly disregarded." Id. The ALJ properly included Dr. Fromm's medical recommendations for limitations of physical activities and also properly

---

[4]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he . . . can also do sedentary and light work." 20 CFR § 404.1567(c).

rejected Mr. Kienast's claim of manipulative limitations. The court finds

substantial evidence in this record which a reasonable mind might accept

as adequate to support the ALJ's decision on Mr. Kienast's RFC. 42 U.S.C.

§ 405(g); Choate, 457 F.3d at 869.

Mr. Kienast's challenge to the 2010 ALJ decision on this ground is

denied.

### C.    THE RFC ERRONEOUSLY ASSUMES MR. KIENAST IS FUNCTIONAL FOR AN ENTIRE 8-HOUR WORKDAY

Plaintiff argues the ALJ erroneously assumed Mr. Kienast could

functionally perform "for an entire 8-hour workday." (Docket 10 at p. 18).

Mr. Kienast's argument is premised primarily upon his own testimony

relating to pain intensity and his need to rest. Id. at pp. 18-19.

The ALJ did not assume Mr. Kienast could perform an 8-hour

workday. Rather, the ALJ accepted the substantial weight of the evidence

that Mr. Kienast could perform light work. That evidence includes:

> In 2005 the PWPE concluded Mr. Kienast was capable of performing medium work [which has a higher level of physical demands]. (AR at p. 22; Docket 8 at ¶ 25);

> In 2005, after reviewing the PWPE, Dr. Lawlor placed Mr. Kienast on a maximum lift limit of 35 pounds, no upper extremity overhead activity, changing positions from sitting to standing and walking every 45 minutes as necessary, and Mr. Kienast concurred with these limitations. (AR at p. 22);

> In 2005, an orthopedic consultant with the South Dakota Disability Determination Services ("DDS") completed a RFC. This report concluded Mr. Kienast "had the physical capacity

. . . to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday . . . ." (Docket 8 at ¶ 26; AR at pp. 22-23);

In 2006, a second consultant with DDS also completed a RFC. This consultant concluded Mr. Kienast "had the physical capacity . . . to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday . . . ." (Docket 8 at ¶ 29; AR at p. 23); and

The ALJ found Mr. Kienast "attends to his own personal needs . . . has no difficulty operating a motor vehicle as well as riding his ATV for fun, he works part-time at his online computer-operated business . . . he spends hours each day, in one-half hour segments, reading and working on his computer, . . . prepares meals, goes shopping, goes fishing, and performs household chores." (AR at p. 23).

Light work is defined by Social Security Regulations as:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he . . . can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(b). In making his determination that Mr. Kienast was capable of performing light work, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (AR at p. 20).

In arriving at the light work conclusion, the ALJ gave Mr. Kienast "the benefit of the doubt by placing his [RFC] at light instead of the medium determined by the FCE Evaluation." Id. at p. 23.

The court finds substantial evidence in this record which a reasonable mind might accept as adequate to support the ALJ's decision on Mr. Kienast's RFC. 42 U.S.C. § 405(g); Choate, 457 F.3d at 869. Mr. Kienast's challenge to the 2010 ALJ decision on this ground is denied.

Within the same objection, Mr. Kienast argues the ALJ erred by not using the Medical Vocational Guidelines ("MVGs") of 20 CFR, part 404, subpart P, appendix 2. (Docket 10 at p. 20). The ALJ found Mr. Kienast was capable of performing light work and, therefore, was not disabled. (AR at pp. 23-24; Docket 8 at ¶ 6). This conclusion was made at step four of the sequential evaluation process. "At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled." 20 CFR § 404.1520(a)(iv). The MVGs are not a consideration unless the claimant reaches step five of the sequential evaluation process.

Plaintiff's emphasis on the MVGs is misplaced because the ALJ found Mr. Kienast not disabled at step four and did not need to proceed to step five of the sequential process. "If a claimant is found . . . not disabled at any step in the sequential process, the ALJ need not proceed further."

<u>Nimick v. Secretary of Health and Human Services</u>, 887 F.2d 864, 865 (8th Cir. 1989) (referencing § 404.1520(a)(4) ("If we can find that you are . . . not disabled at a step, we make our determination or decision and we do not go on to the next step.").

Mr. Kienast's challenge to the 2010 ALJ decision on this ground is denied.

## ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion (Docket 9) is denied.

IT IS FURTHER ORDERED that defendant's motion (Docket 11) is granted.

Dated March 13, 2013.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE